### THE JAMES McDONOUGH.

(Circuit Court of Appeals, Second Circuit. November 11, 1912.)

#### No. 37.

1. MUNICIPAL CORPORATIONS (§ 657*)—STREETS—EFFECT OF NONUSER—NEW YORK CITY.

Laws N. Y. 1861, c. 311, amendatory of the general highway law, and providing that public highways and private roads not opened and worked within six years from the time they are laid out shall cease to be roads, does not apply to streets, avenues, and roads in New York City or Brooklyn.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 722, 844, 1429, 1496; Dec. Dig. § 657.*]

2. WHARVES (§ 16*)—RIGHT TO WHARFAGE.

The city of Brooklyn by regular proceedings opened a street extending to the bulkhead line on the bay, where the former owner of the land had

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

a cribwork structure, which he subsequently allowed to fall into decay, and the city of New York sank some piles at the end of the street, to which tugs tied up to obtain water from a hydrant. *Held*, that such former owner had no further rights in the water front opposite the street, which entitled him to collect wharfage from the vessels using such piles.

[Ed. Note.—For other cases, see Wharves, Cent. Dig. §§ 13–18; Dec. Dig. § 16.*]

Appeal from the District Court of the United States for the Southern District of New York; Charles M. Hough, Judge.

Suit in admiralty by Isaac R. Robinson against the steam tug James McDonough; Henry H. Lee, claimant. Decree for respondent, and libelant appeals. Affirmed.

This is an appeal from a decree dismissing a libel to recover wharfage, for what is alleged to be the use and occupation of libelant's bulkhead at the foot of Court street, in the borough of Brooklyn, New York City.

E. L. Owen, of New York City, for appellant.

Foley & Martin, of New York City (Frank A. Spencer, Jr., and John F. Foley, both of New York City, of counsel), for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. At one time there was at the location in question a cribwork structure at the bulkhead line, as established by law. This at the time in question was broken down, or in such a condition of disrepair that vessels could not lie against it. Some 25 feet or so above the foot of Court street the city of New York maintains a hydrant from which water is sold to tugs. In order to facilitate this operation two clumps of piles have been driven by the city authorities into the land under water in front of the bulkhead line, and these two clumps are connected by a 12 by 12 piece of timber, on which are two cleats, to which vessels' lines are made fast; the vessel lying against the piles. From this timber a plank runs to the shore and is spiked down on what was originally a part of the old cribwork. Between the shore and the hydrant is an old shanty, which extends for nearly the entire width of the street; a passageway of 2 or 3 feet being left at one side of it. In order to obtain water the vessel ties up to the piles, and a man carries a hose ashore over the plank, connecting it with a pipe which runs through the shanty to the hydrant. The libelant contends that he owns the land where the old cribwork stands and on which the plank rested, and that, although he provided no facilities for tying up or lying at that place, he is entitled to wharfage, because his property was used to land the hose and to support it while the water was being drawn.

It will be perceived that his position involves a claim of title to land which the city insists that it owns in fee, in trust for public use, or at least that it has an easement for use of it as a public street which is paramount to the owner's fee—assuming that the fee is in some one other than the city. We are of the opinion that this question of title

is not to be tried collaterally in an action of this sort, where the city is not a party and has no opportunity to be heard; but upon libelant's own showing of the facts we think he would not be entitled to recover, for the following reasons:

It may be assumed that libelant's predecessors originally owned the land within the lines of Court street and on both sides of it. It is not disputed that the city laid out Court street on the map, over this land, from Bryant street to the bulkhead line. There were introduced in evidence without objection the petition, order appointing commissioners, report of commissioners, and orders confirming their report, dated May 21, 1877, and confirming the assessment. We are not furnished with any copy of these, and must assume they contain nothing unusual or especially helpful to libelant's claim. The proceeding in which they were filed is described in the record on appeal as one for "opening Court street from Bryant street to the bulkhead line." Libelant asserts in his brief that the city opened the street only down to the shanty. There is nothing in the record to show this, or to contradict the documentary evidence that the opening was from Bryant street to the bulkhead line. Apparently libelant confuses the opening of a street in this city with the improvement of the same for street purposes.

"The word 'opened,' as used with reference to streets and public places in the city [of New York], has come to have a special technical meaning, recognized in many statutes, as referring to the time when the city becomes vested with the title to the land upon which the street or avenue is to run." Johnson v. Cox, 196 N. Y. 118, 89 N. E. 457.

It is a common experience in this city that years sometimes elapse, after a street is opened, before it is regulated and graded, or flagged, paved, or sewered, or has water mains laid in it—improvements which are frequently carried out one at a time. Whoever was originally the owner of the tract of land on Gowanus Bay, it must be taken as established by the record here that the city obtained a title—whether fee or easement—to so much of it as lies within the lines of Court street from Bryant street to the bulkhead line, for the purposes of a public street.

[1] Libelant cites chapter 311, Laws of New York 1861. This amends section 99 of article 4, title 1, chapter 16 of part 1 of the Revised Statutes, so as to read as follows:

"Sec. 99: Every public highway and private road already laid out and dedicated to the use of the public, that shall not have been opened and worked within six years from the time of its being so laid out, and every such highway hereafter to be laid out that shall not be opened and worked within the like period, shall cease to be a road for any purpose whatever; but the period during which any suit, mandamus, certiorari, or other proceeding shall have been or shall be pending, in regard to any such highway, shall form no part of said six years, and all highways, that have ceased to be traveled or used as a highway for six years shall cease to be a highway for any purpose."

This amendment in substance extended the provisions of the original section, which referred only to "public highways," to private roads. Libelant contends that under this statute the failure of the city to remove the shanty for more than six years after the street was opened,

in 1877 operated to destroy its title, whether in fee or easement, to the land from the shanty to the bulkhead line. Without the decision of some higher state court to sustain such a construction of this statute, we are not inclined to hold that this amendment of the general legislation as to public highways applies to streets, roads, and avenues in New York and Brooklyn, where such a comprehensive, intricate, and detailed system has been established by numerous specific enactments for so many years.

[2] It is further contended that, as there was before 1877 a bulkhead at the bulkhead line, the opening of Court street to the bulkhead line left wharfage rights in such owners of the original bulkhead, and that, although broken down, the placing of the piles in front of it reestablished the entire bulkhead, by restoring that which was broken down; and the District Court is criticised for referring to the bulkhead line as "imaginary." That word may not be strictly accurate, since such line has been definitely fixed by authority; but the court's meaning is clear. The line is a mathematical or topographical abstraction. The line, or rather the vertical plane in which that line lies, extends in width the extent prescribed by the statute establishing the bulkhead line and indefinitely in a vertical direction. But it is wholly devoid of thickness, and, therefore, upon it there is no bulkhead, because no bulkhead, mooring posts, or piles can possibly stand on it. The bulkhead, such as it is, lies inside of the vertical plane and extends up to it.

We concur, therefore, with the District Judge in the conclusion that across the foot of Court street the libelant—

"has no wharf, nor even a bulkhead. He asserts a wharfage right along a bulkhead which he cannot even construct without trespassing upon the rights either in fee or easement of the city of New York in and on Court street."

The decree is affirmed, with costs.

NOYES, Circuit Judge, concurs in the result.